UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ELIZABETH HELFRICH,

                          Plaintiff,

    -against-                                                          7:11-CV-1532 (LEK)

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,[1]

                          Defendant.

## MEMORANDUM-DECISION and ORDER

**I.  INTRODUCTION**

Before the Court is an action for judicial review, pursuant to General Order 18 of the United States District Court for the Northern District of New York, of the Social Security Administration's ("SSA") denial of Plaintiff Elizabeth Helfrich's ("Plaintiff") application for Supplemental Security Income ("SSI").  Both parties have filed Briefs.  Dkt. Nos. 9 ("Plaintiff's Brief"); 12 ("Defendant's Brief").  For the reasons discussed below, the SSA's decision is vacated and Plaintiff's claim is remanded for a new hearing and further development of the record.

**II.  BACKGROUND**

    **A.  Treatment History**

As a twelve-year old fifth grader, Plaintiff underwent a psychological evaluation and was found to be multiply disabled based on learning, language, and social-emotional deficiencies.  Dkt. No. 8 ("Record") at 192.  Plaintiff was transferred to a special education program, which adjusted

---

[1] On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commisioner, replacing Michael Astrue.  She has been substituted as the named Defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

curriculum requirements to meet Plaintiff's needs and placed Plaintiff in a small-classroom setting. R. at 93-97.

School psychologist Colleen M. Henegan ("Henegan") reevaluated Plaintiff when she was sixteen years old. R. at 192. Testing revealed that, although Plaintiff appeared to be trying her hardest, her skills equaled a grade level of 3.2 in reading, 4.7 in math, and 2.2 in spelling. Id. Based upon these findings, Plaintiff remained in the small classroom special education program. Id. Plaintiff also received a psychological evaluation from therapist Sharon Shumac, who identified the source of Plaintiff's problems to be moderate or frequent anxiety, family dysfunction, problems learning, and social isolation. R. at 139-40. After semiweekly therapy sessions, Plaintiff began to control her anxiety, but had a difficult time improving her social isolation. Id.

Henegan tested Plaintiff again when she was eighteen years old. Ms. Henegan found Plaintiff's reading, math, and spelling abilities still to be at between a third- and fifth-grade level, and found Plaintiff's full-scale IQ to be 70. R. at 147. Plaintiff was assigned to licensed social worker Debra Bosco ("Bosco"). R. at 195. Bosco, over time, found that Plaintiff always tries to "present[] that life is very good for her" and downplay family conflict at home. R. at 195-96, 203. On other occasions, Bosco referred to Plaintiff's lack of insight in addressing her own life. R. at 213.

Plaintiff was also referred to Psychologist Dr. Sumit Grover. Dr. Grover began treating Plaintiff and completed a full psychological assessment that referred to Plaintiff's previous testing in addition to his own evaluation. Dr. Grover found that Plaintiff "ignored her shortcomings and exaggerated her capabilities . . . again and again . . . in the sessions." R. at 186. Dr. Grover diagnosed Plaintiff with "borderline/mild Mental Retardation with other mental health issues

2

including Anxiety Disorders, challenging behavior." R. at 188. He cautioned that without appropriate intervention, Plaintiff would, *inter alia*, "[f]urther develop low self-esteem and mental health problems (most likely in the form of social anxiety)." Id.

Plaintiff has begun working in a long-term vocational training program. R. at 135. Although Plaintiff has worked up to five days a week for five hours per day, the work that she performs is worth 25-40% less than the $8.40 per hour that she is paid, according to the program. Id.

### B. Consultative Examinations

Plaintiff underwent two consultative examinations scheduled by the SSA. The first examination was performed by Dr. Jeanne Shapiro. Based upon her examination, Dr. Shapiro found that Plaintiff—perhaps—suffered from mild mental retardation. R. at 152. Dr. Shapiro also stated that if Plaintiff "does not know someone well and they yell at her, she breaks out in hives . . . . The yelling makes her nervous, her face turns red, she starts crying some of the time, and she will [not] talk to anyone for 20 minutes." R. at 150. However, because Plaintiff reported having this reaction only twice, and "not for the past few years," Dr. Shapiro did not diagnose a disorder. R. at 152.

Psychiatrist Dr. R. Altmansberger also examined Plaintiff. Dr. Altmansberger's assessment was admittedly incomplete, as "information directly from [the vocational] Program and the job coach was not forthcoming." R. at 155. However, based on the information in front of him, Dr. Altmansberger concluded in his Residual Functional Capacity ("RFC") report that Plaintiff has "some limitations but overall functioning is adequate to perform simple task work."

### C. Administrative Law Judge's Decision

Administrative Law Judge Barry E. Ryan ("ALJ") found that Plaintiff has not engaged in

3

substantial gainful activity since her application date. R. at 14. He found that Plaintiff has a severe impairment—borderline intellectual functioning—but that Plaintiff's anxiety is not severe. R. at 15. Plaintiff's impairments do not meet or equal a listing. R. at 16-17. Upon review of the record, and using the vocational grids as a guideline, the ALJ found that Plaintiff could perform "simple, routine work" "at all exertional levels." R. at 18-20. The Appeals Council denied review of the ALJ's decision, rendering it the final decision of the SSA. R. at 5-7. This action ensued.

### III. LEGAL STANDARD

#### A. Standard for Benefits

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(a). Moreover, a plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

In determining whether a plaintiff has a disability, the Commissioner applies a five-step process. See 20 C.F.R. §§ 404.1520 and 416.920. Moreover, "[i]f at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The five-step process is as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the Secretary next considers whether the claimant

4

has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

Bush v. Shalala, 94 F.3d 40, 44-45 (2nd Cir. 1996) (citations omitted). The plaintiff bears the burden of proof with regard to the first four steps; the Commissioner bears the burden on the fifth step. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

**B. Standard of Review**

In reviewing an SSA decision, a court's role is to determine whether the ALJ's findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); Featherly v. Astrue, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. of New York v. Nat'l Labor Relations Bd., 305 U.S. 197, 229 (1938). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Featherly, 793 F. Supp. 2d at 630.

The reviewing court should not affirm an ALJ's decision if it reasonably doubts that the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986. If the ALJ applied the correct legal standards, the decision must be upheld if the evidence is deemed to be susceptible to more than one rational

5

interpretation, and must be sustained "even where substantial evidence may [also] support the plaintiff's position." See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). The reviewing court may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). It must afford the SSA's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on several grounds: (1) the ALJ's failure to find Plaintiff's anxiety to be a severe impairment is not supported by substantial evidence; (2) the ALJ failed to give weight to the opinion of Dr. Grover, Plaintiff's treating psychologist; and (3) the ALJ reflexively applied the vocational grids where they were not appropriate. See generally Pl.'s Br.

An impairment is "severe" unless it does not significantly limit the plaintiff's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521. "According to the Commissioner's own policy, the threshold severity test should be used as a *de minimis* screening device to eliminate frivolous claims." Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (citing Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). The "treating physician rule" provides that "an ALJ must give controlling weight to the treating physician's opinion when the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Weather v. Astrue, No. 11–CV–00890, 2012 WL 6725858, at *3 (N.D.N.Y Dec. 27,

2012) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Substantial evidence fails to support the ALJ's reasoning. The ALJ reasoned that, although Plaintiff was diagnosed with an anxiety disorder in 2007, it should not be afforded weight because there was no "mental status exam performed during [that] visit to substantiate any diagnosis." R. at 15. However, Dr. Grover and Ms. Bosco continued to document Plaintiff's struggles with anxiety two years later. Dr. Grover noted that Plaintiff's "[a]nxiety comes on when under pressure [and] reports shutting down," made Axis I diagnosis of anxiety disorder, and stated that "[Plaintiff] is unable to cope with strenuous situations, if they occur around her, leading to anxiety and challenging behavior." R. at 185, 188. Without intervention, Dr. Grover stated that Plaintiff is likely to "further develop low self-esteem and mental health problems (most likely in the form of social anxiety)." The ALJ appeared not to give any weight to these findings in concluding that Plaintiff's anxiety produced "no limitations in the four broad areas of mental functioning," and was, on the whole, "benign." R. at 15-16.

Although the Court does not find that Plaintiff's anxiety disorder is necessarily a severe impairment, the ALJ had, at minimum, a duty to further develop the record. It is the ALJ's "affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel." Clark, 143 F.3d at 118 (quoting Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)). Dr. Grover's report found at least some limitation arising from Plaintiff's anxiety. Rather than clarify the degree of that limitation, the ALJ instead appears to have relied solely on the PRT and RFC of Dr. Altmansberger, a one-time consultative examiner that made his findings without full knowledge of the record, and the report of Dr. Shapiro, whose findings

7

appeared even less detailed than Dr. Grover's. R. at 18-20.

The ALJ, inexplicably, never considered the findings of Dr. Grover, as well as the findings of the clinicians and social workers with whom Plaintiff has worked over the years, in favor of the two consultative examinations. Yet, both of these examinations are flawed. Dr. Shapiro did not review the record in examining Plaintiff; rather, her examination was based solely on an interview. Yet the ALJ made no mention of the record evidence suggesting that Plaintiff exaggerates her strengths, has no insight into her weaknesses, and always goes to lengths to convince her healthcare providers that she is doing well even when that is not the case. See, e.g., R. at 195, 203, 205. Furthermore, Dr. Altmansberger's RFC and PRT reports were made in the absence of a significant number of records. R. at 155. To the extent that the ALJ discredited the remainder of the record due to a lack of specificity in addressing the RFC categories, the Second Circuit has held that a lack of specific clinical findings, without more, does not allow an ALJ to discredit the opinion of a treating physician. See Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ's also applied the vocational grids, 20 C.F.R. § 404(P) App'x 2, as a framework for his Step 5 analysis. R. at 21. When a Plaintiff has nonexertional limitations, section 204.00 of the vocational grids provide only a framework for an ALJ's decision. SSR 85-15. An ALJ must rely on vocational expert testimony within the grid framework depends if a claimant's nonexertional impairments "significantly limit" the range of work she can perform, Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986). However, if the nonexertional impairments do not "significantly limit" a claimant's range of work, vocational expert testimony is not necessary; the ALJ need only reconcile his previous RFC findings with the categories set forth in the vocational grids. Zabala v. Astrue,

8

595 F.3d 402, 410-11 (2d Cir. 2010). Although the ALJ's application of the vocational grids was not erroneous given that he found Plaintiff's anxiety not to meaningfully limit her, see R. at 21, on remand the ALJ should not take for granted that routine recitation of the grid categories would be sufficient if further development of the record reveals that Plaintiff's anxiety does limit her RFC, and should therefore conduct a new step 5 analysis.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the decision of the Commissioner is **VACATED** and Plaintiff's claim is **REMANDED** to the SSA for a new hearing consistent with the Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED**.

DATED: March 11, 2014
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge